# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ANDRES CANO, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| vs. | § | SA-18-CV-229-XR |
| | § | |
| STATE FARM MUTUAL | § | |
| AUTOMOBILE INSURANCE CO., | § | |
| | § | |
| *Defendant*. | § | |

## **ORDER ON MOTION FOR SUMMARY JUDGMENT**

On this date, the Court considered Defendant State Farm's Motion for Summary Judgment (docket no. 36) and Plaintiff Andres Cano's Response (docket no. 41). After careful consideration, the Court GRANTS State Farm's motion with respect to all claims.

## BACKGROUND

On January 24, 2018, Plaintiff Andres Cano ("Cano"), a *pro se* attorney, filed this action in the 285th Judicial District Court of Bexar County, Texas. Docket no. 1-1. In that action, Cano asserted claims against Defendants State Farm Mutual Automobile Insurance Company ("State Farm") and LexisNexis Risk Solutions Bureau, LLC ("LexisNexis"). *Id.* State Farm removed that case to this Court on March 7, 2018. Docket no. 1. LexisNexis was dismissed with prejudice on September 25, 2019. Docket no. 43. Remaining are Cano's claims against State Farm: violation of the Texas Deceptive Trade Practices Act ("DTPA"), violation of the Texas Insurance Code, breach of contract, libel, gross negligence, and violation of the Fair Credit Reporting Act ("FCRA").

These various claims all stem from a claim made against Cano's insurance policy. Beginning in April 2011, State Farm insured Cano's 2002 Ford Ranger under Policy Number

1105-658-D18-53B (the "Policy"). Docket no. 36-3 at 3. This Policy provided that State Farm "will settle or defend, as we consider appropriate, any claim or suit asking for [any damages claimed against the named insured]." Docket no. 36-1 at 17. The only claims made against Cano's policy from 2011 to 2016 were two towing incidents in 2011 and 2012. Docket no. 41-1 at 22–23.

That changed in 2016. On February 23 of that year, John Harrington ("Harrington") parked his Smartcar in the parking garage at the Palmer Events Center in Austin, where both Harrington and Cano were taking the Texas Bar Examination. Docket no. 36-2 at 3; no. 36-4 at 10. Harrington parked his vehicle next to a white Ford Ranger that was parked at an angle with its rear over the line. Docket no. 36-5 at 7; no. 36-4 at 28–29.[1] The following day, Harrington noticed the rear driver side of his vehicle was scuffed with white paint. Docket no. 36-2 at 3. Nearby, he noticed the same white Ford Ranger from the prior day with blue scuffs on its bumper. *Id.* Harrington took photographs of both vehicles and left a note on the truck. Docket no. 36-4 at 29. He received no response but identified Cano as the registered owner of the vehicle based on the license plate. *Id.* at 30. On March 2, 2016, Harrington filed a report with the Austin Police Department, explaining the above. Docket no. 36-5 at 4–11.[2] He declined to pursue criminal charges, choosing instead to address the issue with the Character and Fitness Committee of the Texas Board of Law Examiners. Docket no. 36-4 at 10–12.

On March 4, 2016, Harrington's insurance company, USAA, made a claim on Harrington's behalf with State Farm (the "Harrington claim"). Docket no. 36-2 at 4; no. 36-4 at 15. That same

---

[1] These facts are taken from the pleadings and supporting evidence on the record. Where the nonmoving party has failed "to address or respond to a fact raised by the moving party and supported by evidence, then the court may consider the fact as undisputed." *Broadcast Music, Inc. v. Bentley*, Civil Action No. SA-16-CV-394-XR, 2017 WL 782932, at *2 (W.D. Tex. Feb. 28, 2017) (citing FED. R. CIV. P. 56(e)(2)).

[2] The Court also notes that Cano's several offhand and derogatory descriptions of Harrington—not a party to this case— add nothing to Cano's claims.

day State Farm attempted, but failed, to contact Cano. *Id.* The following day, however, Cano informed State Farm that he had not been in an accident, that there was no damage to his vehicle, that no one else had access to his vehicle, and that he was concerned as to how someone got his vehicle and insurance information. Docket no. 36-3 at 37.[3] Cano sent State Farm emails on March 7 and March 21 in which he asserted that an "after-the-fact" claim is inherently unsupportable and that he found it "dubious" for someone to make a claim against his vehicle without having seen the accident occur. Docket no. 41-1 at 25, 27.

To investigate any potential damage, State Farm sent a representative, Joey Portales ("Portales"), out to Cano's residence, where he asked Cano if he could photograph his Ford Ranger. *Id.* at 33. Cano forbid Portales from photographing his vehicle and told Portales he would call State Farm to set up another time to do so. *Id.* Portales noticed a dent on the rear of the vehicle and noted that the damage appeared fresh. *Id.*

State Farm continued its attempts to contact Cano and inspect his vehicle, including both by phone and letter—to no avail. *Id*; docket no. 41-1 at 48. One representative remarked that "[i]n every day that passes, photos and measurements of [Cano's truck] lose credibility given that [Cano] could have easily had [the truck] repaired…." Docket no. 36-3 at 26. Another noted that Cano "gets abusive and aggressive regarding payment" to Harrington. *Id.* at 5. At another point, a representative disconnected the call after Cano "became very angry, abusive" and was

---

[3] Cano also denied any involvement in response to a letter from the Texas Board of Law Examiners Director of Character and Fitness, Lori Adelman, who contacted Cano after Harrington filed a complaint with the Board. Docket no. 36-4 at 26. Cano denied having received any note from any motorist, and claimed he took the exam without incident. *Id.* Cano said he did "not appreciate any aspersions on my character, particularly at this juncture in the process" and that "the accuser doesn't appear sure of the facts himself/herself…serious allegations require more than 'maybe' and 'might.'" *Id.* Because of his denial, the Director suspended the investigation into the matter, though she did note that Cano may face a hearing pursuant to Rule XVII(b) of the *Rules Governing Admission to the Bar of Texas* if it were to later come to light that he was indeed responsible for hitting Harrington's car. *Id.* at 24.

"excessively swearing." *Id.* at 26. Cano claims that throughout this period, he learned that the claim was closed and opened repeatedly but nonetheless did not permit State Farm to perform its investigation. Docket no. 41-2 at 2.

On June 21, 2016, USAA notified State Farm that it intended to recover the amount paid to Harrington, $432.77. Docket no. 36-3 at 377–78. State Farm's records on that date indicate its representatives believed the evidence on file supported Harrington's claim and that if Cano continued to be nonresponsive, State Farm would move forward with accepting liability on the claim. *Id.* at 27 (noting on the claim file that if Cano did not call back, that it was "OK to finalize liability based on evidence on file" which supported Harrington's story). Only July 6, State Farm's representative did so, concluding that they would accept liability because they had allowed Cano sufficient time to get photographs and measurements but that he had not done so and remained unresponsive. *Id.* at 26–27.

There was no further contact between the parties until January 2017. That month, Cano purchased a Dodge Ram pickup and sought a quote on a six-month policy from State Farm. Docket no. 41-1 at 33. State Farm's employee, Cristina Escobar ("Escobar"), provided a quote of $634.64 to which Cano responded, "I will take it." *Id.* at 33–34. Cano asked if he could set that amount up for monthly electronic payments, to which Escobar responded "definitely." *Id.* at 34. But days later, Cano claims one of State Farm's agents said the quote would actually be over $900.[4]

Frustrated at the premium increase, Cano sought quotes from other carriers, learning from Farmers Insurance that they could not insure him because of a claim from February of 2016 in

---

[4] Although Cano provides detailed evidence as to the initial $634 quote, he provides no such evidence of the $900 quote aside from his own affidavit. Nonetheless, at this stage, the Court must give credence to the evidence of the non-moving party, Cano.

4

which Cano was "at fault."[5] Cano received a Comprehensive Loss Underwriting Exchange ("C.L.U.E.") Report that State Farm sent to LexisNexis in which the February 2016 incident was listed, as well as the two towing incidents. On January 24, Cano called State Farm to dispute the claim. Docket no. 36-3 at 26. The representative told Cano that they continued to try and contact him, that he refused, and that a decision to pay the claim was based on the information in file. *Id*; docket no. 41-1 at 48–49. As the representative explained to Cano how to dispute the claim, she claims he called her a clown and then began to scream expletives at her—by his own testimony, he called her a "stupid f*** bitch, or something like that"—so she disconnected the call. *Id.*

Cano sent a DTPA Demand Letter to State Farm on January 25, 2017 in which he continued to deny responsibility for the February 2016 accident, complained that State Farm kept him "in the dark" as to the accident, and complained that agents were demeaning to him by using an accusatory tone and by alleging that he was acting furtively. Docket no. 41-1 at 30–31. In that letter, he threatened to sue if State Farm did not immediately retract all information regarding the Harrington claim. Cano further demanded that State Farm honor the lower of the two insurance quotes he received that month and to stop reporting the towing incidents from 2011 and 2012. *Id.* State Farm did not respond to this letter, and a year later, Cano brought the present suit.

## DISCUSSION

### I. Standard of Review

The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56. To establish that there is no genuine issue as to any material fact, the movant must

---

[5] In fact, that Report does not list Cano as having been "at fault." Cano claims the report says as much because it lists "F.P." beside the claim, but F.P. stands for "First Payment" which explains why "00/00/00" is listed beside F.P. Docket no. 41-1 at 22–23. *See* docket no. 36-6 at 7–8.

either submit evidence that negates the existence of some material element of the non-moving party's claim or defense, or, if the crucial issue is one for which the non-moving party will bear the burden of proof at trial, merely point out that the evidence in the record is insufficient to support an essential element of the non-movant's claim or defense. *Lavespere v. Niagara Machine & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990). Once the movant carries its initial burden, the burden shifts to the non-movant to show that summary judgment is inappropriate. *See Fields v. City of S. Hous.*, 922 F.2d 1183, 1187 (5th Cir. 1991).

For a court to conclude that there are no genuine issues of material fact, the court must be satisfied that no reasonable trier of fact could have found for the non-movant, or, in other words, that the evidence favoring the non-movant is insufficient to enable a reasonable jury to return a verdict for the non-movant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In making this determination, the court should review all the evidence in the record, giving credence to the evidence favoring the non-movant as well as the "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000). The Court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment, *id.* at 150, and must review all facts in the light most favorable to the non-moving party. *First Colony Life Ins. Co. v. Sanford*, 555 F.3d 177, 181 (5th Cir. 2009).

**II. Analysis**

Cano brings the following claims against State Farm:

A. *Texas Deceptive Trade Practices Act*

Cano first brings a claim under the Texas Deceptive Trade Practices Act ("DTPA"), alleging that State Farm engaged in false, deceptive, or misleading acts that caused him damages.

A DTPA plaintiff must prove that: "(1) the plaintiff is a consumer, (2) the defendant engaged in false, misleading, or deceptive acts, and (3) these acts constituted a producing cause of the consumer's damages." *Doe v. Boys Club of Greater Dallas*, 907 S.W.2d 472, 478 (Tex. 1995); *see also* TEX. BUS. & COM. CODE § 17.50(a)(1).

Here, Cano is a consumer because he sought to acquire goods or services in the form of an insurance policy through State Farm. *See McCarrell v. Offers.com LLC*, 19-CV-112, 2019 WL 3220009, at *3 (W.D. Tex. July 16, 2019). Cano's DTPA claim, however, ends there. He has revealed no summary judgment evidence of any false, misleading, or deceptive acts on the part of State Farm.[6] The bulk of Cano's argument lies with State Farm having settled the 2016 Harrington claim and Cano's argument that he had no knowledge of that claim. The record—indeed, the evidence submitted by Cano—belies both claims. First, the evidence offered by both parties makes clear that Cano had knowledge of the Harrington claim. State Farm made repeated attempts to contact Cano to obtain any information State Farm might use to defend the claim, and at each turn, was met with obscenities and noncooperation. *See, e.g.* docket no. 36-3 at 26. One of State Farm's representatives showed up at Cano's home to take photographs to investigate the claim. Docket no. 41-1 at 33. In other words, he had knowledge of the claim.

And most importantly, State Farm was neither false, misleading, or deceptive in its settling of the Harrington claim. The policy itself says as much. It provides that State Farm "will settle or defend, as we consider appropriate, any claim or suit asking for these damages." Docket no. 36-1 at 17 (referring to claims for property damage against an insured). Simply put, the contract unambiguously provides State Farm the right to settle claims made against its insured. And Texas

---

[6] Indeed, Cano makes no attempt to explain how the relevant practices were false, misleading, or deceptive. Rather, his Response merely lists the DTPA elements and provides a bare-bones citation to his summary judgment exhibits. *See* docket no. 41 at 6.

courts uphold the right of an insurer to settle claims in cases like this. *See Dear v. Scottsdale Ins. Co.*, 947 S.W.2d 908, 914 (Tex.App.—Dallas 1997, writ denied), *disapproved of on other grounds by Apex Towing Co. v. Tolin*, 41 S.W.3d 118, 122–23 (Tex. 2001); *see also RSP Corp. v. Great N. Ins. Co.*, 48 F. App'x 916 (5th Cir. 2002) (per curiam) (adopting *Dear*).[7]

In *Dear,* the court found that the plaintiff's purchase of an insurance policy "that did not provide him the right to veto settlement of third-party claims" withdrew any right to complain that any settlement the insurer entered somehow damaged him. *Dear*, 947 S.W.2d at 914. Indeed, where there is such an "unambiguous contractual right to settle claims asserted against" the insured, the insurer "cannot be liable *under any theory* for exercising that right." *Id.* at 915 (emphasis added). Had Cano desired to prohibit State Farm from settling a disputed claim without his consent, "he could have purchased a policy requiring his consent." *Id.* at 914. He did not do so. Accordingly, summary judgment on Cano's DTPA claim is appropriate.[8]

B. *Texas Insurance Code*

Cano next claims that State Farm violated the Texas Insurance Code § 541.151 "by acting in bad faith and misrepresenting the authority of its agents and customer service representatives." Docket no. 42-1 at 25[9]. He asserts State Farm acted in bad faith by shrouding the Harrington claim

---

[7] *See also Martin-de-Nicolas v. AAA Tex. Cty. Mut. Ins. Co.*, No. 3-17-54-CV, 2018 WL 1868048, at *7 (Tex. App.—Austin, Apr. 19, 2018, pet. denied) ("[W]e conclude that the terms of the policy are not ambiguous, and that the policy affords AAA the discretion to settle claims against the insured…without the insured's consent and without the need for a judicial determination regarding whether its insured was legally liable for the damages.").

[8] To the extent that Cano's DTPA claim relies upon State Farm's notation of his towing incidents in 2011 and 2012, that claim fails because Cano presents no evidence that such towings did not occur. The only relevant summary judgment evidence is that Cano was towed twice, and as such, State Farm was not false or misleading in its reporting of such events. Docket no. 41-1 at 22–23. Moreover, Cano's towing claims are barred by the DTPA's statute of limitations of two years (either two years after the act or practice occurred or after Cano should have discovered the occurrence "in the exercise of reasonable diligence"). TEX. BUS. & COMM. CODE § 17.565

[9] In his Response brief, Cano alleges, for the first time, numerous allegations under the Insurance Code that were not raised in his Amended Petition. *Compare* docket no. 42-1 (amended petition) *with* docket no. 41

8

in secrecy and "treating a 23-year patron with no tickets, accidents, or claims, as an outcast not entitled to information." *Id.* at 25–26. He further alleges State Farm acted in bad faith by failing to inform him the Harrington claim was reopened and paid when a representative told him the claim was closed. *Id.* at 26.

To state a claim under Chapter 541, Cano must show that: (1) both he and State Farm are "persons" as defined by § 541.002(2); (2) that State Farm engaged in an act or practice that violated Chapter 541, subchapter B of the Texas Insurance Code, a provision of § 17.46 of the DTPA, or a tie-in provision of the Insurance Code; and (3) State Farm's act or practice was a producing cause of Cano's alleged actual damages. *See* TEX. INS. CODE. §§ 541.002(2) and 541.141; *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 383 (Tex. 2000); *Allstate Ins. Co. v. Watson*, 876 S.W.2d 145, 147 (Tex. 1994).

Cano has not done so. Taking his first allegation under the Insurance Code, that State Farm shrouded the Harrington claim in secrecy, the summary judgment evidence shows that Cano had knowledge of the claim and that State Farm made extensive efforts to communicate with Cano so that State Farm could investigate and potentially defend against the claim. Cano's claim that "[t]hey can't just evaluate a claim and get back to the consumer" falls flat when faced with the evidence provided—by both Cano and State Farm—showing State Farm's efforts to contact Cano and involve him in the investigation process. Docket no. 41-1 at 55.[10]

---

(response in opposition). A plaintiff is generally prohibited from amending his or her complaint in a response to a motion for summary judgment. *See Cepeda v. Emerald Correctional Mgmt. LLC*, 18-CV-150, 2018 WL 4999973, at *3 n.4 (W.D. Tex. Aug. 28, 2018) (citing *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996)). And in any event Cano's additional claims here fail for the same reason his DTPA claim fails: State Farm had, and used, its contractual right to settle a third-party claim, even without Cano's consent.

[10] In fact, the record reveals upwards of twenty calls and emails made to Cano to obtain more information regarding the Harrington claim. *See* docket no. 36-3 at 26–37. He spoke with Heidi Radko, Holly Hitchcock, Tammy Cerny, Nick Croce, Jackie Cooper, Erin Long, Lincoln Koyejo, Joey Portales, Erica Collins, Tina

Cano next points to § 17.46(b)(14) which provides liability for "misrepresenting the authority of a salesmen, representative or agent to negotiate the final terms of a consumer transaction." Docket no. 41-1 at 54-55; TEX. BUS. & COM. CODE § 17.46(b)(14). His allegation here is that State Farm's representatives falsely stated that the Harrington claim was closed. But here, there is no indication Cano and any of State Farm's representatives ever negotiated the "final terms of a consumer transaction." Even accepting that State Farm told Cano the claim was closed—and Cano provides no evidence of such aside from his own affidavit—a representation that State Farm closed a claim is not a negotiation of the final terms of a consumer transaction. And even if a discussion of the Harrington claim were such a negotiation, Cano provides no evidence that any of State Farm's representatives misrepresented their capacity to perform such negotiations.[11] Nor does he provide case law interpreting § 17.26(b)(14) as applicable to this case (in fact, Cano cites not a single case supporting his Insurance Code claim), despite stating in his deposition that he had researched Insurance Code caselaw. Docket no. 41-1 at 55.

C. *Breach of Contract*

Cano's breach of contract claim arises from his claim that one of State Farm's representatives quoted him a six-month policy at $634.64, that Cano accepted that price, and that State Farm breached that alleged contract by later raising the quote to over $900. *See* docket no. 41-1 at 33–34. State Farm counters that the initial quote was not an offer and therefore Cano could not have accepted it such that a binding contract arose. Docket no. 36 at 7.

---

Nguyen, Randall Shickler, Barry King, Stephanie Minor, Shondra Sparks, Shel Shaw-Squires, Jill Luong, Denise Moorman, Chance Hogan, Spencer Watkins, Toni Sisco, James Kelee, and Debbie Tutt.

[11] Cano's Response merely lists the elements of each claim—often without a case citation—and provides a citation to his summary judgment evidence, with no explanation of how that piece of evidence supports the element provided. And in many cases, he merely cites to a specific exhibit (e.g. "Ex. L") with no further pinpoint citation. Nonetheless, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citation omitted).

Under Texas law, the elements of a breach of contract action are: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Smith Intern. Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (citation omitted). The existence of a valid contract, the first element, requires: "(i) an offer; (ii) an acceptance in strict compliance with the terms of the offer; (iii) a meeting of the minds; (iv) each party's consent to the terms; and (v) execution and delivery of the contract with the intent that it be mutual and binding." *Karns v. Jalapeno Tree Holdings, LLC*, 459 S.W.3d 683, 692 (Tex.App.—El Paso 2015, pet. denied).

Here, there was no offer for Cano to accept, so there was no valid contract. To prove a valid offer, a party must show that (1) the offeror intended to make an offer, (2) the terms of the offer were clear and definite, and (3) the offeror communicated the essential terms of the offer to the offeree. *Domingo v. Mitchell*, 257 S.W.3d 34, 39 (Tex.App.—Amarillo 2008, pet. denied). Generally, a price quotation "is not considered an offer; rather, it is typically viewed as an invitation to offer." *J.D. Fields & Co., Inc. v. U.S. Steel Intern. Inc.*, 426 F. App'x 271, 276 (5th Cir. 2011). Nonetheless, "if detailed enough, [a quote] can constitute an offer capable of acceptance" if it is reasonably apparent from the price quote that "assent to the quote is all that is needed to ripen the offer into a contract." *Crest Ridge Const. Grp., Inc. v. Newcourt Inc.*, 78 F.3d 146, 152 (5th Cir. 1996) (Benavides, J., concurring).

The email to Cano, quoting a price of $634.64, was not an offer. As a one-paragraph email, it was not sufficiently detailed, nor was it reasonably apparent from that quote that assent to the price was all that was needed to ripen the offer into a contract. Indeed, after that alleged offer, Cano continued to email State Farm's representatives to iron out possible terms for the policy; Cano later asked if the policy could include a $250 deductible and asked when State Farm would

11

mail out paperwork on the quote, indicating he knew further steps were needed before there was a binding contract. Docket no. 41-1 at 34–35; *see T.O. Stanley Boot Co., Inc. v. Bank of El Paso*, 847 S.W.2d 21, 221 (Tex. 1992) ("Where an essential term is open for future negotiation, there is no binding contract."). The material terms of the contract must be agreed upon for there to be an enforceable contract, and here the only material term included in the price quote was the estimated premium cost; it did not include specific terms regarding coverage, conditions, exclusions, or endorsements. *Id.* As such, there was no offer and therefore no contract that State Farm could have breached.

D. *Libel*

Cano's libel claim rests upon his claim that State Farm reported an alleged falsehood to LexisNexis, specifically that Cano was at fault for the accident underlying the Harrington claim. Docket no. 42-1 at 27–28. Under Texas law, to maintain a defamation cause of action, a plaintiff must prove that the defendant: "(1) published a statement; (2) that was defamatory concerning the plaintiff; (3) while acting either with actual malice, if the plaintiff was a public official or public figure, or negligence, if the plaintiff was a private individual, regarding the truth of the statement." *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998); *see Cuba v. Pylant*, 814 F.3d 701, 713 (5th Cir. 2016) (citing *McLemore* for elements of defamation). The truth of the underlying statement is an absolute defense to any libel action. TEX. CIV. PRAC. & REM. CODE § 73.005(a); *Hurlbut v. Gulf Atl. Life Ins. Co.*, 749 S.W.2d 762, 766 (Tex. 1987).

Here, State Farm conveyed only objectively true information and, as such, cannot be found liable for libel. Indeed, Cano admits that when State Farm told LexisNexis that State Farm paid the Harrington claim, State Farm was telling the truth. Docket no. 41-1 at 59. Cano's only basis for the claim, he admits, is his contention that State Farm reported to LexisNexis that Cano was

"at fault" for the accident underlying the Harrington claim. Though conceding he is not certain what "FP" stands for because he is "not in the insurance business," Cano believes that "FP" (as written on Defendant's report to LexisNexis) stands for "at fault." Docket no. 41-1 at 59–60. Despite that belief, FP stands for "First Payment" date which is why FP is followed by "00/00/00," as Cano never made any payments. *Id.* at 22–23.[12] Without any falsity, such a libel claim cannot stand. Accordingly, summary judgment is appropriate.

    E. *Gross Negligence*

Cano next contends that State Farm was grossly negligent "in the manner it cavalierly adjudges accident claims," accepting "unsubstantiated information" from anonymous sources without inquiry, and because State Farm "recklessly proliferate[d] false and dubious information to credit/insurance reporting entities." Docket no. 42-1 at 28. To establish gross negligence, a plaintiff must prove that "(1) when viewed objectively from the defendant's standpoint at the time of the event, the act or omission involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others and (2) the defendant had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others." *U-Haul Intern., Inc. v. Waldrip*, 380 S.W.3d 118, 137 (Tex. 2012) (citing TEX. CIV. PRAC. & REM. CODE § 41.001(11)).

Cano's summary judgment evidence does not meet this standard. As to Cano's first proffered form of gross negligence—the way State Farm evaluated the damages claim—the

---

[12] Cano's libel claim is also barred by the statute of limitations. The statute of limitations applicable to libel is one year. TEX. CIV. PRAC. & REM. CODE § 16.002(a); *see also Glassdoor, Inc. v. Andra Grp., LP*, 575 S.W.3d 523, 527 (Tex. 2019). A cause of action for libel accrued on the date of the publication alleged to be defamatory. *Glassdoor*, 525 S.W.3d at 528. Here, the date of publication, State Farm's reporting of the Harrington claim, was July 6, 2016. Cano did not file suit until January 24, 2018, six months after the statute of limitations expired.

13

evidence shows only that State Farm made multiple efforts to undertake a proper investigation of the accident but was met at each step with Cano's refusal to cooperate. Cano claims State Farm settled the claim "without inquiry," but the evidence reveals otherwise. State Farm contacted Cano the very day that USAA made a claim with Stat. Docket no. 36-4 at 15. State Farm sent a representative out to Cano's residence to photograph the vehicle but was met with Cano's refusal to allow him to do so. Docket no. 41-1 at 33. State Farm then contacted, or attempted to contact, Cano dozens of times over the following months, choosing to settle the claim only after it became clear from the evidence Harrington submitted that Cano was likely at fault. Docket no. 36-3 at 27. State Farm was indeed unable to fully investigate the claim, but not for lack of inquiry but rather from lack of cooperation by Cano.

And as to the second proffered form of gross negligence—the reporting to LexisNexis— the Court has explained above that State Farm reported only truthful information, so Cano's claim that State Farm "recklessly proliferate[d] false and dubious information to credit/insurance reporting entities" fails. State Farm cannot be grossly negligent for reporting entirely accurate information to a reporting agency.

F. *Fair Credit Reporting Act*

Cano raises two possible sources of liability under the FCRA. First, he claims State Farm violated 15 U.S.C. § 1681s-2 for reporting inaccurate information to LexisNexis. Docket no. 41 at 3–4.[13] Though the FCRA primarily regulates consumer credit reporting agencies, the statute also creates obligations on "furnishers of information" to provide accurate information to those reporting agencies. *Smith v. Nat'l City Mortg.*, No. A-09-CV-881, 2010 WL 3338537, at *15

---

[13] To the extent that Cano's FCRA claim relies upon State Farm's notation of his towing incidents in 2010 and 2011, that claim is barred by the FCRA's statute of limitations of two years (and repose of five years). 15 U.S.C. § 1681p. Those events occurred seven and eight years before Cano brought suit, well after the statute of limitations expired.

14

(W.D. Tex. Aug. 23, 2010) (citation omitted). Such furnishers of information may be liable (1) for reporting information with actual knowledge of errors or (2) for reporting after notice by a consumer that specific information is inaccurate when that information is, in fact, inaccurate. 15 U.S.C. § 1681s-2(a)(1)(A)-(B). But as explained for the libel claim, Cano produces no evidence that the information was, in fact, inaccurate. The report stated that State Farm paid the Harrington claim. And State Farm did, in fact, pay the Harrington claim. There is no dispute as to that fact.

Cano's claim under § 1681(h)(e) fails for the same reasons his separate libel claim failed. That section bars a consumer from bringing any claim "in the nature of defamation…with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnished information to a consumer reporting agency…except as to false information furnished with malice or willful intent to injure such customers." *Morris v. Equifax Info. Servs., LLC*, 457 F.3d 460, 470–71 (5th Cir. 2006) (citing 15 U.S.C. § 1681h(e) (1998)). In other words, Cano must show that State Farm reported false information with malice or willful intent to injure. To do so, he must present "sufficient evidence to permit the conclusion that the defendant *in fact entertained serious doubts* as to the truth of [its] publication." *Id.* at 471 (quoting *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968)) (emphasis in *Morris*).

Cano has not done so. First, and most importantly, the information State Farm reported was not false. But even if there were a dispute as to the accuracy of the reporting, Cano has produced no evidence that State Farm acted with any malice or willful intent to injure him. In contrast to the defendant in Morris, who "continued to publish the same false information about [the plaintiff] without lifting a finger to determine whether the information was false or not," State Farm here made repeated efforts to investigate the underlying claim, all rebuffed by Cano's unwillingness to cooperate. And in any event, the relevant information in the report is not the

underlying car accident but rather whether State Farm paid the underlying claim. It did, and it had a contractual right to do so. There is no FCRA violation under those undisputed facts.

## **CONCLUSION**

Accordingly, Defendant State Farm's Motion for Summary Judgment (docket no. 36) is GRANTED. The Clerk is DIRECTED to enter judgment in favor of Defendant State Farm against Plaintiff Andres Cano. State Farm is awarded its costs of court and shall file a Bill of Costs pursuant to the Local Rules. Cano shall take nothing by his claims.

It is so ORDERED.

SIGNED this 3rd day of December, 2019.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE